UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 09/10/2019

NORDIA ROSNER,

                 Plaintiff,

-against-

FORESTERS FINANCIAL HOLDING CO., INC.,

                 Defendant.

18-CV-4451 (VEC)

ORDER

VALERIE CAPRONI, United States District Judge:

Defendant Foresters Financial Holding Company, Inc. ("Foresters") moves to compel Plaintiff Nordia Rosner to arbitrate her claims of employment discrimination. In a brief essentially devoid of any legal analysis or citations, Plaintiff's counsel claims the parties' arbitration agreement is inapplicable or void. For the reasons discussed below, the Court STAYS this action and GRANTS Defendant's motion to compel arbitration.

## BACKGROUND

On October 14, 2015, Foresters hired Plaintiff, through a staffing agency, to work as an Executive Assistant on a temporary basis. Amend. Compl. (Dkt. 15) ¶ 8. As part of her initial paperwork, she signed an arbitration agreement, which, in relevant part, provides that:

> The Company [Foresters Financial] and I [Nordia Rosner] mutually consent to the resolution by arbitration of all claims or controversies ("claims"), past, present, or future, whether or not arising out of my association (or its termination), that the Company may have against me or that I may have against any of the following (1) the Company, (2) its officers, directors, employees, or agents in their capacity as such or otherwise, (3) the Company's parent, subsidiary and affiliated entities . . . .

Arbitration Agreement ("Agreement") (Dkt. 20-1) at 1. The Agreement, signed by Rosner and the CEO of Foresters Financial, also contained an acknowledgment stating that:

> I ACKNOWLEDGE THAT I HAVE CAREFULLY READ THIS
> AGREEMENT, THAT I UNDERSTAND ITS TERMS, THAT ALL
> UNDERSTANDINGS AND AGREEMENTS BETWEEN THE COMPANY

1

> AND ME RELATING TO THE SUBJECTS COVERED IN THE AGREEMENT ARE CONTAINED IN IT, AND THAT I HAVE ENTERED INTO THE AGREEMENT VOLUNTARILY AND NOT IN RELIANCE ON ANY PROMISES OR REPRESENTATIONS BY THE COMPANY OTHER THAN THOSE CONTAINED IN THIS AGREEMENT ITSELF.
>
> I UNDERSTAND THAT BY SIGNING THIS AGREEMENT I AM GIVING UP MY RIGHT TO A JURY TRIAL.
>
> I FURTHER ACKNOWLEDGE THAT I HAVE BEEN GIVEN THE OPPORTUNITY TO DISCUSS THIS AGREEMENT WITH MY PRIVATE LEGAL COUNSEL AND HAVE AVAILED MYSELF OF THAT OPPORTUNITY TO THE EXTENT I WISH TO DO SO.

Agreement at 3. The Agreement also specifies that arbitration shall, if possible, proceed before FINRA (the Financial Industry Regulatory Authority) and if not, then before JAMS (the Judicial Arbitration & Mediation Services). Agreement at 2.

Approximately two months later, Plaintiff applied for and was converted to a full-time employee at Foresters. Amend. Compl. ¶ 11. After she started her new position in January 2016, Rosner allegedly observed disparities in how Foresters treated its Black and Caucasian employees. *Id.* ¶¶ 12, 16–17. On December 21, 2016, Plaintiff filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") and obtained a right-to-sue letter on May 17, 2018. *Id.* ¶¶ 19–22. Foresters terminated Plaintiff the same day that the EEOC charge concluded. *Id.* ¶ 23.

The Amended Complaint alleges discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964, New York State Human Rights Law, and New York City Administrative Code. *See id.* ¶¶ 26–31.

**DISCUSSION**

Foresters moves to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (the "FAA"). Plaintiff contends that (1) her full-time employment falls outside the

2

scope of the Agreement signed while she was a temporary employee and (2) FINRA is not an appropriate arbitral forum. Both arguments are meritless.

When resolving a motion to compel arbitration, courts must determine (1) "whether the parties agreed to arbitrate," (2) "the scope of that agreement;" (3) "if federal statutory claims are asserted, . . . whether Congress intended those claims to be nonarbitrable" and (4) "if . . . some, but not all, of the claims in the case are arbitrable, . . . whether to stay the balance of the proceedings pending arbitration." *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir. 1987) (citations omitted); *Abreu v. Fairway Mkt. LLC*, No. 17-CV-9532, 2018 WL 3579107, at *2 (S.D.N.Y. July 24, 2018). Whether the parties' agreement to arbitrate is valid is a question of state law. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also* 9 U.S.C. § 2. When interpreting the scope of an arbitration agreement, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope [must be] resolved in favor of arbitration." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995). Any factual disputes are resolved using a "standard similar to that applicable for a motion for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003). "If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." *Id.*

In this case, there is no dispute that Plaintiff signed an arbitration agreement with Foresters Financial, or that the agreement covers the types of employment discrimination claims alleged in the Amended Complaint. *See* Pl. Br. (Dkt. 25) at 2–4; *Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004) ("[I]n the absence of fraud or other wrongful act on the part of another contracting party, a party 'who signs or accepts a written contract . . . is conclusively presumed to know its contents and to assent to them.'" (quoting *Metzger v. Aetna Ins. Co.*, 227 N.Y. 411, 416 (1920))). Courts in this circuit have also

3

consistently compelled arbitration pursuant to arbitration clauses containing language similar to that in the Agreement. *See, e.g.*, *Bellevue v. Exxon Mobile Corp.*, No. 19-CV-652, 2019 WL 1459041, at *2 (E.D.N.Y. Apr. 2, 2019); *Falcone Bros. P'ship v. Bear Stearns & Co.*, 699 F. Supp. 32, 35 (S.D.N.Y. 1988); *Fleming v. J. Crew*, No. 16-CV-2663, 2016 WL 6208570, at *1 (S.D.N.Y. Oct. 21, 2016); *Moss v. Rent-A-Ctr., Inc.*, No. 06-CV-3312, 2007 WL 2362207, at *1 (E.D.N.Y. Aug. 15, 2007); *see also McAllister v. Connecticut Renaissance Inc.*, 496 Fed. App'x 104, 106 (2d Cir. 2012).

Plaintiff primarily argues that her claims are beyond the scope of the Agreement because they arose out of her full-time employment, not the temporary position for which she was hired when she signed the Agreement. *See* Pl. Br. at 2–4. The fact that Plaintiff did not sign a separate arbitration agreement when she began her full-time position is immaterial because the Agreement does not contain a temporal or job-specific limitation. *See Moss*, 2007 WL 2362207, at *8 ("Broadly phrased arbitration agreements create a presumption of arbitrability which is only overcome if the arbitration agreement is not susceptible to an interpretation that covers the dispute." (citing *Bank Julius Baer & Co. v. Waxfield Ltd.*, 424 F.3d 278, 284 (2d Cir. 2005))). Rather, the Agreement unambiguously extends to all claims "past, present, or future," between Plaintiff and the Company and its affiliates, "whether or not" those claims "ar[ise] out of [Plaintiff's] association" with Foresters Financial. Agreement at 1. Because of the breadth of that contractual language, a subsequent agreement would have been redundant.

Plaintiff otherwise argues that the Agreement should not apply because neither party is an entity regulated by FINRA, making FINRA an inappropriate arbitral forum.[1] *See* Pl. Br. at 4.

---

[1] Plaintiff also contends that Defendant's Employee Handbook, which is separate from the Agreement, is an illusory contract that is not binding on Plaintiff. *See* Pl. Br. at 3. The Court declines to rule on the significance, if any, of the Handbook because Plaintiff is obligated to arbitrate pursuant to the terms of the Agreement alone.

4

The Agreement, however, has anticipated the possibility that FINRA may not be available to arbitrate a dispute. In such cases, the Agreement requires the parties to arbitrate through JAMS—which Plaintiff does not contend would be in any way improper. *See* Agreement at 2. Thus, Plaintiff's argument as to FINRA is simply irrelevant to Foresters' motion, which does not seek to seek to compel arbitration before FINRA specifically.[2]

In sum, there is no material dispute that Plaintiff's claims fall within the scope of the Agreement.

## CONCLUSION

For these reasons, Defendant's motion to compel arbitration is GRANTED. This case is hereby STAYED pending arbitration. The parties are ordered to file a joint status report with the Court every six months, on the first business day of the relevant month, until the conclusion of all arbitration proceedings, updating the Court on the progress of arbitration. The first such report shall be due on **March 2, 2020**. The Clerk of Court is respectfully directed to terminate all other pending motions and deadlines.

Dated:  September 10, 2019
        New York, New York

_____
VALERIE CAPRONI
United States District Judge

---

[2] The Court need not, and does not, decide whether the arbitration should proceed through FINRA or JAMS.